No. 14-14239-QQ

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

METROPCS COMMUNICATIONS, INC. and
METROPCS FLORIDA, LLC,

Appellants,

vs.

JORGE PORTER,

Appellee.

---

From the July 11, 2014, Order of the United States District Court for the
Southern District of Florida in Case No. 13-23745 (Judge Lenard)

---

## REPLY BRIEF OF APPELLANTS

---

Michael J. Stortz
Drinker Biddle & Reath LLP
50 Fremont St., 20th Floor
San Francisco, CA 94105-2235

Michael P. Daly
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996

Aaron S. Weiss (FBN 48813)
Carlton Fields Jorden Burt P.A.
100 S.E. Second Street, Suite 4200
Miami, FL 33131-2114

James B. Baldinger (FBN 869899)
Carlton Fields Jorden Burt P.A.
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401-6350

*Attorneys for Appellants*
*MetroPCS Communications, Inc.*
*And MetroPCS Florida, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ......................................................................... ii

ARGUMENT ...........................................................................................1

I. Plaintiff's Pleading Seeks to Recover All Monies Paid to MetroPCS ...........2

II. Plaintiff's Pleading Alleges That All Customers Were Misled .....................8

III. Whether Plaintiff Alleges That All Customers Were Misled Is Irrelevant ......................................................................................10

IV. Any Doubt Should Be Resolved in Favor of Removal, Not Remand ..........13

CONCLUSION ....................................................................................15

CERTIFICATE OF COMPLIANCE .....................................................16

CERTIFICATE OF SERVICE ..............................................................17

# TABLE OF CITATIONS

**Page(s)**

CASES

*Breuer v. Jim's Concrete of Brevard, Inc.*,
538 U.S. 691 (2003)....................................................................................13, 14

*Brill v. Countrywide Home Loans, Inc.*,
427 F.3d 446 (7th Cir. 2005) .......................................................................1, 11

*Bryan v. Wal-Mart Stores, Inc.*,
No. 08-5221, 2009 WL 440485 (N.D. Cal. Feb. 23, 2009)......................... 12-13

*Calkins v. Google, Inc.*,
No. 13-00760, 2013 WL 3556042 (N.D. Cal. July 12, 2013) ...........................12

*Coleman v. Estes Express Lines, Inc.*,
730 F. Supp. 2d 1141 (C.D. Cal. 2010), *aff'd*, 631 F.3d 1010
(9th Cir. 2011)..................................................................................................12

*Helm v. Alderwoods Grp., Inc.*,
No. 08-01184, 2008 WL 2002511 (N.D. Cal. May 7, 2008) ............................12

*Kucana v. Holder*,
558 U.S. 233 (2010)..........................................................................................14

*Lewis v. Verizon Commc'ns, Inc.*,
627 F.3d 395 (9th Cir. 2010) .......................................................................1, 11

*Lowery v. Ala. Power Co.*,
483 F.3d 1184 (11th Cir. 2007) ........................................................................14

*Mann v. Unum Life Ins Co. of Am.*,
505 F. App'x 854 (11th Cir. 2013) ...................................................................13

*Margulis v. Resort Rental, LLC*,
No. 08-1719, 2008 WL 2775494 (D.N.J. July 14, 2008) ..................................13

*McDaniel v. Fifth Third Bank*,
568 F. App'x 729 (11th Cir. 2014) ...............................................................1, 11

*Miedema v. Maytag Corp.,
450 F.3d 1322 (11th Cir. 2006) ............................................................1, 11, 12

Muniz v. Pilot Travel Ctrs. LLC,
No. 07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007)...............12

Perlman v. Prudential Ins. Co of Am., Inc.,
686 So. 2d 1378 (Fla. 3d DCA 1997) ....................................................4

Pullman Co. v. Jenkins,
305 U.S. 534 (1939)........................................................................7

*Raskas v. Johnson & Johnson,
719 F.3d 884 (8th Cir. 2013) ..........................................................1, 11

*S. Fla. Wellness, Inc. v. Allstate Ins. Co.,
745 F.3d 1312 (11th Cir. 2014) ........................................................1, 11, 12

*Schunk v. Moline, Milburn & Stoddard Co.,
147 U.S. 500 (1893)........................................................................11

Shamrock Oil & Gas Corp. v. Sheets,
313 U.S. 100 (1941)........................................................................13

Smithers v. Smith,
204 U.S. 632 (1907)........................................................................1

*Spivey v. Vertrue, Inc.,
528 F.3d 982 (7th Cir. 2008) ..........................................................1, 11

St. Paul Mercury Indem. Co. v. Red Cab Co.,
303 U.S. 283 (1938)........................................................................7

Standard Fire Ins. Co. v. Knowles,
--- U.S. ---, 133 S. Ct. 1345 (2013)..................................................7, 14

SUA Ins. Co. v. Classic Home Builders, LLC,
751 F. Supp. 2d 1245 (S.D. Ala. 2010) ..............................................5

White v. Playphone, Inc.,
No. 08-683, 2009 WL 499103 (W.D. Wis. Feb. 27, 2009)................................13

# ARGUMENT

In its Principal Brief, MetroPCS explained that the lower court erred by declining jurisdiction unless MetroPCS not only conceded that it had misled its customers but also quantified the number of customers whom it had misled. Plaintiff's Answer Brief does not deny that courts cannot do that. Indeed, not once does he disagree with the holdings of any of the decisions MetroPCS cited from the Supreme Court,[1] this Court,[2] or other Courts of Appeal.[3] Instead, he argues that they are irrelevant here because he disavows that every customer was misled. And curiously, he also disavows relief that he requested in his pleading and that would be available to class members whose interests he pledged to protect.

Plaintiff misstates the record and the law. As for the record, Plaintiff invites this Court to misread or at least ignore his own error-filled pleading. His pleading alleges that customers were told that there are no Terms and Conditions of Service, alleges that no customer would have paid for MetroPCS services or products had they known otherwise, and requests the return of any monies they paid for those services or products. Nothing in his pleading purports to limit the scope of the

---

[1]    *See* Principal Brief at 14 (citing *Smithers v. Smith*, 204 U.S. 632 (1907)).

[2]    *See id.* at 16-18 (citing *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312 (11th Cir. 2014); *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006); *McDaniel v. Fifth Third Bank*, 568 F. App'x 729 (11th Cir. 2014) (per curiam)).

[3]    *See id.* at 18-22 (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005); *Raskas v. Johnson & Johnson*, 719 F.3d 884 (8th Cir. 2013); *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395 (9th Cir. 2010)).

class or relief as he now proposes. To the contrary, it seeks not only classwide damages but also all other classwide relief allowable, which as a matter of law can include rescission and restitution of payments. *See infra* Sections I and II.

And as for the law, it makes no difference whether Plaintiff's plan is to seek certification of an overbroad class (only some members of which have viable claims), a fail-safe class (any member of which by definition has a viable claim), or something else. Just as the right to remove an individual action cannot be conditioned on a concession of liability to a named plaintiff, the right to remove a class action cannot be conditioned on a concession of liability to some or all unnamed plaintiffs. As courts have correctly found, if a plaintiff alleges that a defendant may have injured an indeterminate number of its customers, the experience and potential recovery of every customer is very much "in controversy" when jurisdiction is determined. *See infra* Section III.

## I.     Plaintiff's Pleading Seeks to Recover All Monies Paid to MetroPCS

Plaintiff argues that his pleading did not "seek a return of all monies paid to MetroPCS for any product or service." Answer Brief at 10. Specifically, he says that he is "not seeking any damages for payment of monthly wireless service" and is "not seeking a return of monies for the purchase of any point of sale transaction such as the purchase of a cell phone or accessories such as cases, Bluetooth and memory cards." *Id.* at 10; *see also id.* at 21 ("[the pleading] identifies a class based

on revenue from costs and fees, which by definition, are not the same as revenue generated from sales.").  His pleading says the opposite, however.

Although replete with scrivener's errors,[4] the Second Amended Complaint is categorical in alleging that customers did not understand that there would be any "agreements, contracts and/or contractual 'terms and conditions' regulating the customer relationship . . . ."  Sec. Am. Compl. ¶ 1 (Doc. 1-3 at 192); *see also id.* at 2 (Doc. 1-3 at 193) (alleging that subscribers were "under the impression and understanding that there were no contracts, agreements or contractual terms and conditions").  In no uncertain terms, it alleges that the phrase "no contract" is "fraudulent and misleading" and was "designed and intended for obtaining money, subscribers, customers [sic] for its products and services under false pretenses . . . ."  *Id.* ¶ 34 (Doc. 1-3 at 199); *see also id.* at 11 ¶ 53 (Doc. 1-3 at 202) ("MetroPCS falsely advertised that 'no contract' or no contractual terms and conditions were required from the customer in connection with the acquisition or use of its phones or services when in fact that was false."); *id.* ¶ 54 (Doc. 1-3 at 202) ("MetroPCS intended and in fact did publicly circulate this false advertisement to obtain money

---

[4]     As Plaintiff himself points out, the Second Amended Complaint is actually styled the "Amended Class Action Amended [sic] Complaint for Damages." Answer Brief at 8 n.1.

and customers and in fact did so obtain said benefits by publicly creating this false impression"); *id.* ¶ 55 (Doc. 1-3 at 202) ("Each Class member was harmed.").[5]

In short, the Second Amended Complaint alleges that MetroPCS used the "no contract" phrase as a fraudulent inducement, i.e., "for obtaining money, subscribers, [and] customers for its products and services." *Id.* ¶ 34 (Doc. 1-3 at 199). Plaintiff proposes that he will "protect[t] . . . the interests of the Contract Class members" through his "prosecution of this case" on their behalf. *Id.* ¶ 7 (Doc. 1-3 at 196). He then asserts claims for fraud (Count IV) and violation of FDUTPA (Count V) that seek—for both himself and the class—any "damages" and "other relief allowable," which as a matter of law can include rescission of contracts and restitution of payments. *See id.*, Count IV, Prayer for Relief (c) (Doc. 1-3 at 203); *id.*, Count V, Prayer for Relief (Doc. 1-3 at 203); *see also, e.g.*, *Perlman v. Prudential Ins. Co of Am., Inc.*, 686 So. 2d 1378 (Fla. 3d DCA 1997) (explaining that rescission, restitution and punitive damages are remedies for fraudulent inducement).

Accordingly, it was entirely appropriate for MetroPCS to establish the amount in controversy by reference to the amount of money that it obtained from its customers in Florida for its products and services throughout the putative class period. To be clear, MetroPCS does not believe that Plaintiff or any other putative

---

[5] The Second Amended Complaint has two paragraphs numbered 54 and 55. These are quotations from the paragraphs on page 11.

class member was "fraudulently induced" to pay for its products and services in the belief that there was no binding agreement between the customer and MetroPCS. But it cannot reasonably be disputed that he put those amounts "in controversy" through the facts alleged, claims asserted, and Prayer for Relief included in his Second Amended Complaint.

To argue otherwise, Plaintiff has had to ignore his broad Prayer for Relief and abandon his obligation to represent the interests of putative class members. Specifically, he invites this Court to read paragraphs b and c on page 3 in isolation. But even in isolation they do not support him.[6] Putting aside for the moment that they were an attempt to plead commonality rather than limit the scope of the class or relief requested, *see infra* Section II, they refer to any "monetary amount" or "monetary damages," which is clearly broad enough to capture payments for monthly wireless services and point of sale transactions. *See* Sec. Am. Compl. at 3 ¶ b (Doc. 1-3 at 194) (describing customers who were "subject to a fee, penalty, fine, suit and/or charge because of any provision or section found in MetroPCS

---

[6]    Plaintiff argued below that jurisdiction does not arise simply because a complaint has a "lengthy addendum [sic] clause."  Reply in Supp. of Mot. to Remand at 10 (citing *SUA Ins. Co. v. Classic Home Builders, LLC*, 751 F. Supp. 2d 1245, 1256-57 (S.D. Ala. 2010)).  That is true, so far as it goes.  But the defendant in *SUA Insurance* quoted a "misleading snippet" of an *ad damnum* clause in order to suggest that the plaintiffs demanded "that their home be literally replaced from the foundation up" even though "as the full *ad damnum* clause . . . makes clear, what they seek is replacement of the defective drywall."  *SUA Ins. Co.*, 751 F. Supp. 2d at 1253.  This case is different because, as noted above, the Prayer for Relief broadly seeks all "damages" and "other relief allowable" without even a hint that Plaintiff meant to recover less than what is "allowable."

'terms and conditions' ***and/or suffered monetary damages*** due to the existence of MetroPCS 'terms and conditions.") (emphasis added); *id.* at 3 ¶ c (Doc. 1-3 at 194) (describing customers who "paid a fee, fine, penalty ***and/or some monetary amount*** because of the existence of MetroPCS 'terms and conditions.'") (same).

Undeterred, Plaintiff suggests that paragraphs b and c do not capture monthly service charges because such charges are not incurred "due to" or "because of" the Terms and Conditions of Service. *See* Answer Brief at 13-14. That is plainly wrong, though. Indeed, even a cursory review of the document reveals that it requires payment of those charges. *See* Terms and Conditions of Service (DE 4-7 at 20) ("**Start of Service Form/Rate Plan/Coverage Brochure.** The Start of Service form may identify the Rate Plan you have chosen and set forth the charges you are required to pay for Service, *including monthly or other cyclical access fees*, as well as any applicable surcharges or other fees." (italics added)); *id.* at 63 ("**Charges.** You are responsible for paying all charges for Service . . ., including, but not limited to the following: (1) *recurring monthly or weekly access charges*; (2) charges and taxes for optional Service features that you select, including long distance and directory assistance (411) calls and other optional features, such as ringtone downloads and @metro data services; (3) any Service reconnection charges that may apply, such as a reactivation fee; and (4) all applicable taxes and regulatory charges whether assessed directly on you or us . . .

." (italics added)); *id.* at 17 ("MetroPCS may terminate your Service if you fail to timely pay for your Service.").

If Plaintiff now wishes to exclude payments "for monthly wireless services" or "any point of sale transaction" from the relief requested, he is free to seek leave to amend yet again. But he cannot pretend that he has already done that, or for that matter that the lower court held that he had.[7] Nor can he achieve remand by trying to narrow the scope of the relief requested now that jurisdiction has attached. *See, e.g.*, *Standard Fire Ins. Co. v. Knowles*, --- U.S. ---, 133 S. Ct. 1345, 1350 (2013) ("CAFA . . . permits the federal court to consider only the complaint that the plaintiff has filed, *i.e.*, this complaint, not a new, modified (or amended) complaint that might eventually emerge."); *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) ("[T]he right to remove . . . was to be determined according to the plaintiffs' pleading at the time of the petition for removal."); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) ("[T]hough . . . the plaintiff after removal, by stipulation, by affidavit, or by amendment . . ., reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction.").

---

[7] Plaintiff implies that the lower court agreed that he does not seek recovery of payments for monthly service or point of sale transactions. Answer Brief at 10-11. Nothing in the lower court's remand order says anything of the sort. (DE 70). Nor would it have, as the Second Amended Complaint seeks all available relief and does not carve out "monthly wireless services" or "point of sale transactions," or indeed any other kinds of charges. The lower court did not find that Plaintiff had not requested recovery of such payments or that such a recovery was legally impossible given the claims asserted. Instead, it found that MetroPCS had not quantified customers who were entitled to that relief because they were misled.

## II. **Plaintiff's Pleading Alleges That All Customers Were Misled**

Plaintiff argues that MetroPCS "improperly broadened the definition to include all MetroPCS customers instead of the [sic] limiting the class definition to the sub-group of customers actually described." Answer Brief at 9. Specifically, he suggests that paragraphs a, b and c on pages 2 and 3 of the complaint were not an attempt to plead commonality as their headings suggested, but were in fact an attempt to "further define[]" the class. *Id.* at 3.

That strains credulity for several seemingly obvious reasons. First, Plaintiff had no need to "further define" the class, as he had already defined it at length under the heading "**Definition of the Class**":

> [C]onsumers who became and/or continued to be METROPCS subscribers under the understanding that except for monthly payment for the wireless services that are [sic] no agreements, contracts and/or contractual "terms and conditions" regulating the customer or membership relationship between METROPCS and Florida subscribers/users of METROPCS wireless services, during the period of time METROPCS disseminated or caused to be advertised or marketed its products and services under a "no contract" or "no agreement" basis. This loss [sic] of consumers are [sic] referred to as "Contract Class," and represents the second set of consumers that Porter represents.

Sec. Am. Compl. ¶ 1 (DE 1-3 at 192-93).

Second, if Plaintiff nevertheless thought that his class definition needed "further defining," he would have done so under the "**Definition of the Class**" heading. He would not have done so under the "**Common Facts For Each Class**"

8

and "**CONTRACT CLASS: SHARE THE FOLLOWING COMMON FACTS**" headings, which is where paragraphs a, b and c can be found. *Id.* at 2-3 ¶¶ a, b & c (DE 1-3 at 193-94).

Third, if their heading isn't evidence enough, their structure and content is. There are seven paragraphs under the heading "**Common Facts For Each Class**." With the notable exception of the one paragraph that is missing the word "is," every one of those paragraphs begins with some variation of "class member" followed by a verb, for example "Each Class Member purchased the same Phone" or the "class member paid a fee." *Id.* at 2-3 (DE 1-3 at 193-94). They are followed by the heading "**Common Questions of Law**" and six paragraphs that are all phrased as questions, for example "Whether the sales tax charged was legal." *Id.* It is clear, then, that this section is an attempt to enumerate common questions of law and fact. Indeed, it serves no purpose and makes no sense otherwise.

Fourth, Plaintiff alleged that MetroPCS had misled not only its customers but also the public at large. Sec. Am. Compl. ¶ 20 (DE 1-3 at 197-98) (describing "false advertisement in a misleading manner to the general public of this State by false advertisement"); *id.* ¶ 53 (DE 1-3 at 202) ("METROPCS caused to publicly disseminate in form of marketing and advertising false and misleading advertisement."); *id.* ¶ 54 (DE 1-3 at 202) ("MetroPCS intended and in fact did publicly circulate this false advertisement to obtain money and customers and in

fact did so obtain said benefits by publicly creating this false impression of its products and services.").  Plaintiff cannot allege a broad theory of liability in state court and then disclaim it entirely in order to escape federal court.  Indeed, that is precisely the sort of jurisdictional gaming that CAFA was meant to prevent.

When paragraph a on page 2 is viewed against this backdrop, it is obvious that it was an attempt to allege that "Every subscriber or member of METROPCS [is] under the impression and understanding that there were no contracts, agreements or contractual terms and conditions," that omitting "is" was just one of many scrivener's errors, and that correcting that did not "rewrite" the pleading. Sec. Am. Compl. at 2 ¶ b (DE 1-3 at 193).  Any suggestion otherwise is absurd.

## III.  <u>Whether Plaintiff Alleges That All Customers Were Misled Is Irrelevant</u>

In any event, as MetroPCS explained in its Principal Brief, whether Plaintiff successfully alleged that every customer was misled is irrelevant.  He does not even try to address the authorities MetroPCS cited for the proposition that it makes no difference whether he alleged an overbroad class (only some members of which have viable claims), a fail-safe class (any member of which by definition has a viable claim), or some other proposed class.  In any case the "overinclusiveness" argument is the same: that a defendant cannot remove unless it admits liability to some indeterminate group of its customers.  And in any case the argument runs afoul of the "perfect defense" rule that was announced more than 100 years ago.

*See, e.g.*, *Schunk v. Moline, Milburn & Stoddard Co.*, 147 U.S. 500, 505 (1893) ("In short, the fact of a valid defence to a cause of action, although apparent on the face of the petition, does not diminish the amount that is claimed, nor determine what is the matter in dispute; for who can say in advance that that defence will be presented by the defendant, or, if presented sustained by the court?").

Under *Schunk* and its progeny, courts cannot decline their jurisdiction even if there are perfect defenses to the claims of named plaintiffs. How, then, can courts decline their jurisdiction based on ***possible*** defenses to the claims of ***unnamed*** class members? As this Court and many others have found, they cannot. *See S. Fla. Wellness*, 745 F.3d at 1315-17; *Miedema*, 450 F.3d at 1331; *McDaniel*, 568 F. App'x at 730-31; *see also, e.g.*, *Brill*, 427 F.3d at 448; *Raskas*, 719 F.3d at 887-88; *Spivey*, 528 F.3d at 985-86; *Lewis*, 627 F.3d at 400.

It follows that whether Plaintiff alleged that 'every customer was misled' is a red herring. Even if he had said that 'some indeterminate number of customers were misled,' he still would have placed the experience and potential recovery of each customer "in controversy." Courts cannot resolve that controversy at the time of removal as to a named plaintiff, much less unnamed putative class members. Nor can courts decline jurisdiction because defendants did not reach or otherwise accede to the merits of any customer's putative claim. Instead, as this Court and many others have said, courts must calculate the amount in controversy based on

the total customer base and leave the merits of individual customers' claims for another day. *See S. Fla. Wellness*, 745 F.3d at 1317 (approving calculation of amount in controversy based on "[t]he maximum difference in the amount of payments that rides on the outcome of the declaratory judgment" even though some insureds may not have valid claims, for example if a treatment had been unnecessary, unreasonably expensive, or unrelated to an accident); *Miedema*, 450 F.3d at 1331 ("[T]he district court should not have faulted Maytag for 'fail[ing] to confirm that each of the 6,729 units had the defective motorized door latch assembly.'"); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) (calculating amount in controversy based on 100% violation rate), *aff'd*, 631 F.3d 1010 (9th Cir. 2011); *Calkins v. Google, Inc.*, No. 13-00760, 2013 WL 3556042, at *2-3 (N.D. Cal. July 12, 2013) (holding that defendant satisfied its burden by providing number of calls rather than number of calls that were unauthorized); *Helm v. Alderwoods Grp., Inc.*, No. 08-01184, 2008 WL 2002511, at *5 (N.D. Cal. May 7, 2008) ("[D]efendants cannot be expected to try the case themselves for purposes of establishing jurisdiction, and then admit . . . that a certain number of . . . violations did indeed occur."); *Muniz v. Pilot Travel Ctrs. LLC*, No. 07-0325 FCD EFB, 2007 WL 1302504, at *2, *4 (E.D. Cal. May 1, 2007) (recognizing that defendant need not "prove the plaintiff's claims" and assuming 100% violation rate); *Bryan v. Wal-Mart Stores, Inc.*, No. 08-5221, 2009

WL 440485, at *3 (N.D. Cal. Feb. 23, 2009) (rejecting "unworkable" request that defendant "conduct a fact-specific inquiry into whether the rights of each and every potential class member were violated"); *White v. Playphone, Inc.*, No. 08-683, 2009 WL 499103, at *4 (W.D. Wis. Feb. 27, 2009) ("[T]he complaint puts into controversy the propriety of all of defendants' charges."); *Margulis v. Resort Rental, LLC*, No. 08-1719, 2008 WL 2775494, at *5 (D.N.J. July 14, 2008) ("To require defendant to provide further information, e.g., whether the calls were placed to individuals who provided consent or were engaged in a business relationship, would require defendant to concede aspects of the claim against it . . . . This is not proper.").

## IV.     Any Doubt Should Be Resolved in Favor of Removal, Not Remand

Plaintiff argues that that any doubt must be resolved in favor of remand. *See* Answer Brief at 7 (citing *Mann v. Unum Life Ins Co. of Am.*, 505 F. App'x 854, 856 (11th Cir. 2013)). This is an academic point because there should be no doubt about the propriety of this removal. But if we assume for argument's sake that there were, they should not be resolved in favor of remand.

The Supreme Court has described a reflexive presumption against removal as an artifact of a bygone era. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the plaintiff moved to remand and cited in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) for the proposition that there is a "federal

policy of construing removal jurisdiction narrowly." *See Breuer*, 538 U.S. at 697.

The Court explained that "whatever apparent force this argument might have claimed when *Shamrock* was handed down has been qualified by later statutory development" when the statute was amended in 1948. *Id.* More recently, it held that jurisdictional statutes must be construed "with fidelity to the terms by which Congress has expressed its wishes." *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (citation omitted).

Resolving doubts against removal ignores that Congress meant for CAFA to expand jurisdiction and ease removal. *See Standard Fire*, 133 S. Ct. at 1350 (stating that CAFA was meant to ensure "Federal court consideration of interstate cases of national importance." (citation omitted)); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1197 (11th Cir. 2007) ("Congress expressly intended CAFA to expand federal diversity jurisdiction over class actions. To read the plain language of the removal provisions narrowly . . . would frustrate congressional intent that CAFA be used to provide for more uniform federal disposition of class actions affecting interstate commerce . . . ."). It follows that, at least insofar as CAFA removals are concerned, any doubts should not be resolved in favor of remand.

Although panels of this Court have said otherwise in *Mann* and *Miedema*, both of those decisions relied on the Supreme Court's decision in *Shamrock Oil* without regard to its qualification by *Breuer*. To the extent the Court concludes

that there is any doubt as to this removal—and, to be clear, it should not—MetroPCS respectfully requests that the Court revisit this issue in light of CAFA's legislative purpose and the Supreme Court's decision in *Breuer*.

## <u>CONCLUSION</u>

For the foregoing reasons, MetroPCS respectfully requests that this Court reverse the Order below and remand with instructions for further proceedings.

Respectfully submitted,

By   s/ *Aaron S. Weiss*

Michael J. Stortz
Drinker Biddle & Reath LLP
50 Fremont St., 20th Floor
San Francisco, CA 94105-2235
Telephone:  (415) 591-7583
Facsimile:  (415) 591-7510
E-mail:   michael.stortz@dbr.com

Aaron S. Weiss (FBN 48813)
Carlton Fields Jorden Burt P.A.
100 S.E. Second Street, Suite 4200
Miami, Florida  33131-2114
Telephone:  (305) 539-7382
Facsimile:  (305) 530-0055
E-mail:   aweiss@carltonfields.com

Michael P. Daly
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757
E-mail:   michael.daly@dbr.com

James B. Baldinger (FBN 869899)
Carlton Fields Jorden Burt P.A.
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401-6350
Telephone: (561) 650-8026
Facsimile: (561) 659-7368
E-mail:   jbaldinger@carltonfields.com

*Attorneys for Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing document complies with: the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Eleventh Circuit Rule 28-1, the type-face requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6).  I further certify that the foregoing document was prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

By   <u>s/ *Aaron S. Weiss*          </u>
Aaron S. Weiss

## CERTIFICATE OF SERVICE

I certify that, on this 16th day of October, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I further certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing

By   s/ *Aaron S. Weiss*
                Aaron S. Weiss

**Service List**

Gonzalo R. Dorta
Mathias Dorta
Gonzalo R. Dorta, P.A.
334 Minorca Avenue
Coral Gables, Florida 33134

*Counsel for Plaintiff/ Appellee Jorge Porter*

Manuel Fente
Law Offices of Manuel F. Fente, P.A.
1110 Brickell Avenue, 7th Floor
Miami, Florida 33131

*Counsel for Defendant CAI, Inc.*